**ORIGINAL**

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JUN 24 2010

JAMES N. HATTEN, Clerk
By:                    Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| TERI and JIM AINSWORTH, FAY G. BELLAH, TRACY CONKLE, MICHAEL E. CONKLE, ROBIN and DANNY EARNEST, CATHERINE and ROBERT KIRK, and WAYNE WALKER, <br><br>     Plaintiffs, <br><br> vs. <br><br> COMMUNITY BIBLE CHURCH (a.k.a. CLAYTON COMMUNITY CHURCH, INC.); COMMUNITY CHRISTIAN SCHOOL (a.k.a. COMMUNITY SCHOOL, INC.); WHITLEY ENGINEERING, INC.; W.S. AGEE GRADING CONTRACTOR, INC. (d.b.a. AGEE GRADING); HENRY COUNTY, GEORGIA; and MEMBERS OF THE HENRY COUNTY BOARD OF COMMISSIONERS, ELIZABETH "BJ" MATHIS, WARREN E. HOLDER, MONROE ROARK, RANDY STAMEY, REID BOWMAN, SR., and JOHNNY BASLER, in their individual and official capacities. <br><br>     Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> CIVIL ACTION FILE <br><br> NO. 1:10 CV - 1964 |

## COMPLAINT

COME NOW Plaintiffs Teri and Jim Ainsworth, Fay G. Bellah, Tracy Conkle, Michael E. Conkle, Robin and Danny Earnest, Catherine and Robert Kirk, and Wayne Walker ("Plaintiffs") and hereby file this Complaint against Defendants, Community Bible Church and Community Christian School (collectively, "CBC"); Whitley Engineering, Inc. ("Whitley"); Agee Grading ("Agee"); and Henry County, Georgia, and the members of the Henry County Board of Commissioners (collectively, "Defendants") as follows:

## JURISDICTION AND VENUE

1.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), and may issue a declaratory judgment and further relief pursuant to 28 U.S.C. §§ 2201 and 2202. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a) because those claims arise from the same transaction or occurrences, are related to the federal claims, and form part of the same case or controversy under Article III of the United States Constitution.

2

2.

Venue is appropriate in this Court because the Defendants are located in this District and Division and a substantial part of the events and omissions giving rise to the claim occurred in this District and Division.  33 U.S.C. § 1365(c); 28 U.S.C. § 1391(b).

## **PARTIES**

3.

Plaintiffs Teri and Jim Ainsworth are individuals who own and reside at the property located at 55 Cook Lane in Stockbridge, Georgia.

4.

Plaintiff Fay G. Bellah is an individual who owns and resides at the property located at 100 Helen Lane in Stockbridge, Georgia.

5.

Plaintiff Tracy Conkle is an individual who owns and resides at the property located at 105 Helen Lane in Stockbridge, Georgia.

6.

Plaintiff Michael E. Conkle is an individual who resides at the property located at 105 Helen Lane in Stockbridge, Georgia.

7.

Plaintiffs Robin and Danny Earnest are individuals who own and reside at the property located at 155 Helen Lane in Stockbridge, Georgia.

8.

Plaintiffs Catherine and Robert Kirk are individuals who own and reside at the property located at 145 Helen Lane in Stockbridge, Georgia.

9.

Plaintiff Wayne Walker is an individual who owns and resides at the property located at 115 Helen Lane in Stockbridge, Georgia.

10.

Defendant Community Bible Church, also known as Clayton Community Church, Inc., is a Georgia non-profit corporation located at 2001 Jodeco Road in Stockbridge, Henry County, Georgia. Its registered agent is Buford H. Adams, Jr., 210 Monrose Drive, McDonough, Georgia, 30253.

11.

Defendant Community Christian School, Inc., also known as Communtiy School, Inc., is a non-profit corporation located in Stockbridge, Henry County, Georgia. Its registered agent is Buford H. Adams, Jr., 210 Monrose Drive, McDonough, Georgia, 30253.

4

12.

Defendant Whitley Engineering, Inc. is a for-profit corporation incorporated and existing under the laws of the State of Georgia with its principal place of business located at 38 East Main Street North in Hampton, Georgia, 30228. Whitely can be served with process upon its registered agent, Mark G. Whitley, at 1205 McKinley Road in Zebulon, Georgia, 30295.

13.

Defendant W.S. Agee Grading Contractor, Inc., is a company operating in Georgia with its principal place of business located at 477 Highway 155 North in McDonough, Georgia, 30252.  Agee can be served with process upon its registered agent, Danny Agee, at 477 Highway 155 North, McDonough, Georgia, 30252.

14.

Defendants Henry County and the Henry County Board of Commissioners (together "Henry County") are resident in Henry County, Georgia.  Henry County can be served with process through the Chairman of the Henry County Board of Commissioners, Elizabeth "BJ" Mathis, at 140 Henry Parkway, McDonough, Georgia, 30253.

5

## FACTUAL BACKGROUND

### 15.

Plaintiffs own and reside on property located on Helen Lane and Cook Lane in Stockbridge, Georgia.

### 16.

The property on which Community Bible Church is located is on approximately 38 acres, approximately 12 acres of which are immediately upgradient of and immediately adjacent to several of the Plaintiffs' homes. Before the Community Bible Church acquired this property, the property was completely wooded.

### 17.

The Community Christian School is located on the Community Bible Church property and has operated there since approximately 1997. The school enrolls approximately 1,000 students. Extensive expansion of the school's facilities has occurred over the last ten years, including the construction of a new education building in 2000, the recent addition of a 24-classroom pre-school building, and the current construction of a new gymnasium and athletic fields. CBC operates through a mix of charitable and non-charitable funds.

6

18.

In connection with recent expansion activity, allegedly related to the construction of various athletic fields and facilities on the CBC property, CBC, with the assistance of Agee, cleared approximately 12 acres of land that directly abuts several of the Plaintiffs' properties.  Plaintiffs were impacted almost immediately by the clearing of all trees and groundcover on the hill behind them, which dramatically increased the flow of storm water from the CBC property and caused the runoff of vast amounts of silt and sediment from the CBC property, as documented on video recordings taken by on the Plaintiffs on March 27, 2009.  CBC and Agee also trucked in approximately 200 truck-loads of fill dirt in connection with the grading of the site.  The source of the fill dirt is unknown.

19.

Prior to the removal of the trees and vegetation on the land above them the Plaintiffs did not experience any problems with significant storm water runoff or with the runoff of silt and sediment.  CBC, Whitley, and Agee commenced this major construction project in March of 2009.

20.

The clearing, grading, and excavation activities undertaken by CBC and Agee have channeled all storm water from the 12 acres onto and through Plaintiff Walker's property and have created conduits for soil, silt, and other pollutants to reach waters of the United States and of the State of Georgia.

21.

CBC, Whitley, and Agee all failed to obtain a permit from Henry County, which is a certified local issuing authority under the Erosion and Sedimentation Act of 1975, O.C.G.A. § 12-7-1, *et seq.*, or to submit a notice of intent ("NOI") in order to obtain coverage under the National Pollution Discharge Elimination System ("NPDES") permit for storm water for construction activities prior to commencing these activities, as required by the Clean Water Act, 33 U.S.C. § 1251, *et seq.*

22.

Henry County is the local issuing authority and was responsible for issuing permits for land disturbance and storm water discharges at the CBC site under O.C.G.A. § 12-7-8(a). Henry County has been aware of the construction at the site from the beginning, as indicated in e-mails between County officials from March of 2009, noting that a visit to the site had revealed that the trees left on the site

were not sufficient to buffer the residential neighbors, as had been agreed to as a condition of the development and that the trees that were there posed a safety hazard. *See* Exhibit "A." Such a buffer has never been created. Despite their awareness of the project, Henry County failed to require that the necessary NOI, permits, or hydrology reports be submitted.

23.

The County noted on a development plan coversheet submitted on October 29, 2009, that improvement was needed at 115 Helen Lane, including a swale and conveyor channel. *See* Exhibit "B." This coversheet also noted that Whitley and CBC needed to submit a design professional erosion and sedimentation prevention control plan ("ESPCP") within seven days after best management practices were installed, but such a plan was not submitted for several months. *Id.* A development plan review checklist on the CBC project indicates that the plan was disapproved on November 3, 2009. *See* Exhibit "C."

24.

On November 3, 2009, officials from the Georgia Environmental Protection Division ("EPD") notified Henry County of citizen complaints involving runoff from the CBC site onto Plaintiff Walker's property, noting discharges of storm water and sediment flow across Walker's yard to a receiving storm line under

9

Helen Lane, which were ultimately discharging into a creek. *See* Exhibit "D." The report noted that the septic system on Walker's property was at risk and recommended significant grading of the property, which has not been done. *Id*. The storm water basin designed for the CBC property by Whitley has been completely inadequate to handle storm water coming from the CBC property.

25.

On December 17, 2009, EPD sent an e-mail to George Patterson with the Henry County Building Department, notifying the County of a second citizen complaint regarding the CBC site, for which Henry County was responsible as the local issuing authority. *See* Exhibit "E." The complaint indicated that water and sediment runoff from CBC to the Conkle Plaintiffs' property at 105 Helen Lane was causing sink holes in the rear of the property and that water was accumulating and standing at the back of the structure on the Conkle property. *Id*. A note on the document signed by George Patterson indicates that Whitley was to submit an NOI "ASAP." *Id*. CBC has made no effort to repair the sink holes.

26.

After repeated complaints by Plaintiffs, EPD inspected the site in January of 2010 and noted that CBC "did not file an NOI nor did they have any real BMPs in place." *See* Exhibit "F." EPD officials noted that Henry County was "basically

10

refusing to take action" with regard to permitting the CBC site. *Id.* EPD's

inspection revealed that the "site is completely unstable with large piles of dirt

destined for use as fill." *Id.* Furthermore, "runoff laden with silt" was observed

leaving the site and "running through the neighbors yard and emptying into a

stream." *Id.*

27.

EPD noted that they convinced Henry County to issue a stop work order on

January 7, 2010, but that the County was "not willing to require them to get a

permit etc." *Id. See also* Exhibit "G," Stop Work Order. The County never took

any action to enforce the Stop Work Order, however, and another notice from the

County on January 19, 2010, noted that the siphon pipes were "full of debris" and

the silt fence was "down and undermined." *See* Exhibit "H."

28.

Under pressure from EPD, CBC and Whitley finally submitted an NOI on

January 26, 2010. *See* Exhibit "I." The General Permit requires that best

management practices, to prevent or reduce pollution, must be properly

implemented for all construction activities. General Permit, Part III(C)(1) & (2).

It also specifies that discharges shall not cause violations of water quality

11

standards.  General Permit, Part I(C)(4).  This NOI was to have been submitted

prior to any construction activities commencing at the property.

29.

On April 2, 2010, EPD issued a complaint inspection report and noted that

the CBC site was "very muddy, no BMP, no stabilization."  *See* Exhibit "J."  The

report noted that temporary stabilization of the site was needed and that erosion

control measures taken in the area directly near the discharge pipe were inadequate

for the amount being discharged.  *Id.*  This report includes numerous photographs

illustrating discharges of storm water and silt from the CBC site to Plaintiffs'

properties.

30.

These discharges continue to occur during every rainfall event of any

significance and have been documented on video on at least four occasions over

the past year:  on March 27, 2009; on January 21, 2010; on March 11, 2010; and

on May 3, 2010.

31.

Since CBC, Whitley, and Agee began these construction activities, and

continuing today, excessive amounts of storm water, sediment, and other pollutants

have been discharged onto Plaintiffs' properties during and after storm events.

12

32.

These discharges have damaged fences, washed out septic tanks, and created erosion problems on several of the Plaintiffs' properties. Several of the Plaintiffs have also had damage to the foundations of their homes as a result of the huge amounts of water washing down from the CBC property, causing structural and other property damage. Both CBC and Henry County have been repeatedly notified of these damages.

33.

The inadequate erosion and sedimentation controls put in place at the commencement of construction did very little, if anything, to slow the flow or quantity of storm water and sediment discharged from the CBC property. Plaintiffs have observed sediment-laden storm water pouring over partially-collapsed silt fencing, and geysers have appeared in many of the Plaintiffs' yards, with water springing up out of the ground during rainstorms as a result of the grading and filling of the CBC property.

34.

An area was dug out in an apparent attempt to create an inadequate detention pond, which has since been substantially increased in size and extends from behind the Conkle Plaintiffs' property to the Earnest Plaintiffs' property but remains

13

improperly designed and constructed. The entire contents of the pond drain directly onto Plaintiff Walker's property via a culvert.

35.

After being channeled to the culvert and across Plaintiff Walker's property, these discharges enter into a stream on Plaintiff Bellah's property and ultimately into a lake on the Ainsworth Plaintiffs' property, both of which constitute waters of the United States and of the State of Georgia.

36.

Prior to the construction activity at CBC, both the stream and the lake were clean and clear, and the lake was clear enough to see the many fish living in the lake. The lake is now extensively discolored and filled with sediment. Over the course of a single day, the amount of increased sediment deposited in the lake was visibly noticeable. None of this sedimentation has been removed or remediated.

37.

CBC, Whiley, and Agee have repeatedly failed and refused to comply with best management practices and requisite permitting requirements during the ongoing construction activities. Henry County has repeatedly failed and refused to comply with their non-discretionary permitting and enforcement duties with regard to the CBC site, even after being notified by Plaintiffs and by EPD on multiple

14

occasions of problems with storm water discharges from the site.

38.

Henry County's Soil Erosion and Sedimentation Control Ordinance requires that "[m]easures shall be installed to prevent or control erosion and sedimentation during all stages of any land-disturbing activity." Exhibit "K." Sec. 3-6-34(a). The failure to properly design, install, or maintain best management practices shall constitute a violation of any land-disturbance permit or state general permit for each day on which such violation occurs. Sec. 3-6-3-4(b)(3).

39.

Henry County's general design principles include the following requirements: conform to topography and soil top so as to create the lowest possible erosion potential; retain natural vegetation whenever possible; keep the area and duration of disturbed area to a minimum and quickly stabilize such areas; provide temporary vegetation or mulching to protect critical areas during development; trap sediment in runoff water until the area is stabilized; prevent endangerment to adjacent properties with cut and fill activities; and prevent encroachment upon natural watercourses or constructed channels that will adversely affect other property owners. Sec. 3-6-34(c)(3).

15

40.

With regard to permitting, the Henry County ordinance provides that no person shall conduct any land-disturbing activity within the county without first obtaining a permit from the county. Sec. 3-6-35(b)(1). If a permit applicant has had two or more violations of a previous permit, or of the state or local erosion and sedimentation laws, within three years of applying, the permit may be denied. Sec. 3-6-35(c)(5). Similarly, a permit may be revoked upon a finding by the county that the holder is not in compliance with the ordinance or with its approved erosion and sedimentation control plan. Sec. 3-6-35(d)(4). County officials are required to inspect sites to determine compliance and the effectiveness of the erosion and sedimentation control plan. Sec. 3-6-36(a). Any person who commences a land-disturbing activity without first obtaining a permit is subject to the revocation of any other license or permit issued by the county for associated work activities. Sec. 3-6-37(a).

41.

Henry County's Storm water Runoff Ordinance provides detailed provisions for storm water control (Sec. 3-6-62) and for storm water detention (Sec. 3-6-63). Exhibit "L."

16

42.

Despite instruction from, and promises to, EPD officials, CBC, Whitley, and Agee have failed to complete requisite control measures within the deadlines established, including the installation of vegetative cover to stabilize the site and improvements to erosion and sedimentation controls.

43.

The actions and inactions of the Defendants have resulted in continuing discharges of storm water, sediment, and other pollutants into receiving waters.

44.

Accordingly, the stream and the lake have been, and continue to be, polluted with sediment-laden storm water runoff. None of this pollution has been remediated.

45.

The turbidity and sedimentation caused by the construction activity at CBC affects the biological community of aquatic organisms in the stream and lake.

46.

The actions and inactions of Defendants have resulted in a significant increase in the quantity of storm water that flows onto the Plaintiffs' properties.

47.

Prior to filing this lawsuit, Plaintiffs provided notices of intent to sue in accordance with 33 U.S.C. § 1365(b) and a request that Defendants abate the nuisance and trespass they were committing against the Plaintiffs. *See* 3/31/2010 and 6/9/2010 letters, attached hereto as Exhibit "M." Defendant Agee refused delivery of its notice letter. Exhibit "N."

## COUNT I

### Violation of the Clean Water Act

48.

Section 301 of Clean Water Act ("CWA") prohibits the discharge of pollutants into waters of the United States, except as otherwise expressly authorized by the Act. 33 U.S.C. § 1311(a).

49.

Section 505(a)(1) of the Clean Water Act authorizes citizens to commence a civil action against entities who are alleged to be in violation of a CWA standard or limitation after having provided sixty (60) days notice of intent to sue. 33 U.S.C. § 1365(a)(1) and (b)(1). An action may be brought immediately, however, if there has been a violation of Section 306. 33. U.S.C. § 1365(b)(1).

18

50.

Effluent standard or limitation includes a permit or condition thereof issued

under Section 402 of the CWA. 33 U.S.C. § 1365(f)(6).

51.

Section 402 of the CWA prohibits the discharge of pollutants from a point

source into waters of the United States without a National Pollutant Discharge

Elimination System ("NPDES") permit or in violation of an NPDES permit. 33

U.S.C. § 1342.

52.

Discharges associated with construction activities, including clearing,

grading, and excavation of at least one acre, require an NPDES storm water

discharge permit. 33 U.S.C. §§ 1311(a) and 1342(p); 40 C.F.R. § 122.26(b)(15).

53.

The activities undertaken by CBC, Whitley, and Agee at the CBC property

include the clearing, grading, and excavating of more than one acre.

54.

The storm water runoff from CBC continues to discharge soil, silt, storm

water, and other pollutants into waters of the United States and of the State of

Georgia.

19

55.

CBC, Whitley, and Agee have not complied with the CWA.

56.

As the responsible local issuing authority, Henry County has failed to mandate that CBC, Whitley, and Agee obtain the requisite permits prior to commencing construction at the site, as required by the Clean Water Act. Henry County has also failed to regulate the site and to require compliance with the terms of the General Permit and related local ordinances.

57.

In Georgia, storm water discharges associated with construction activities of this type are regulated by the Authorization to Discharge Under the National Pollutant Discharge Elimination System, Storm water Discharges Associated with Construction Activity for Stand Alone Construction Projects, GAR 100001 (the "General Permit") issued by EPD. Exhibit "O."

58.

EPD has delegated authority for issuing land disturbing permits to Henry County as the local issuing authority.

59.

Although the Notice of Intent ("NOI") for coverage under the General

Permit is to be submitted at least fourteen (14) days prior to commencing

construction activities, CBC and Whitley did not submit an NOI until January 27,

2010, almost a year after construction had commenced. General Permit, Part

II(A)(1). Neither CBC, Agee, nor Whitley has ever obtained a land disturbing

permit from Henry County.

60.

The NOI indicates that 10.73 acres will be disturbed in connection with the

construction activities and that the receiving water is Pates Creek, a warm water

fisheries stream. *Id*.

61.

The General Permit specifies that best management practices, to prevent or

reduce pollution, must be properly implemented for all construction activities.

General Permit, Part III(D).

62.

CBC, Whitley, and Agee have failed to properly implement best

management practices for erosion control. There are numerous instances in which

erosion and sedimentation controls were insufficient and failed, causing improper

21

releases of storm water in violation of the General Permit. These violations are continuous and on-going and impacts have yet to be remediated.

63.

Defendants are deriving substantial economic benefit by violating the law.

64.

The General Permit specifies that discharges shall not cause violations of water quality standards. General Permit, Part I(C)(4).

65.

The failure of CBC, Whitley, and Agee to maintain best management practices has caused, and continues to cause, discharges of sediment-laden storm water to flow into waters of the United States and has caused, and continues to cause, violations of Georgia's water quality standards, including the requirement that all waters be free from "discharges in amounts sufficient to be unsightly or to interfere with legitimate water uses" or "which produce turbidity, color, odor, or other objectionable conditions which interfere with legitimate water uses." Ga. Comp. R. & Regs. § 391-3-6-.03(5)(a) and (c). Discharges are also prohibited from producing turbidity which results in a substantial visual contrast in a water body due to man-made activity. Ga. Comp. R. & Regs. § 391-3-6-.03(5)(d).

22

66.

The General Permit and the CWA require that existing instream water uses

and the level of water quality necessary to protect the existing uses shall be

maintained and protected.  Ga. Comp. R. & Regs. § 391-3-6-.03(2)(b) and 40 CFR

§ 131.12(a)(1).

67.

Such discharges also violate Ga. Comp. R. & Regs. § 391-3-6-.15(4), which

provides that all pollutants receive such treatment or corrective action so as to

ensure compliance with the terms and conditions of the issued permit and with the

following, whenever applicable:

    (a) Effluent limitations established by the EPA pursuant to Sections 301,
        302, 303, 306, 307, 308, 318, and 405 of the Federal Act; and

    (b) Criteria and standards for Best Management Practices established by
        EPA pursuant to Section 304(e) of the Federal Act.

68.

The detention pond on the CBC property does not control the flow of storm

water as required by the Georgia Storm water Management Manual and the

General Permit.

23

69.

CBC and Whitley were instructed by EPD to provide temporary vegetation to the cleared area, but have failed to do so. They also agreed to do so in the Erosion Control Affidavit submitted in January, 2010. A copy of this affidavit is attached hereto as Exhibit "P."

70.

CBC, Whitley, and Agee have not taken, and are not taking, all reasonable steps to minimize or prevent discharges that have a reasonable likelihood of adversely affecting the environment in violation of the General Permit. General Permit, Part V(D).

71.

Defendants have failed to comply with their permit requirements regarding inspections, sampling, and record keeping.. 33 U.S.C.. §1318(a); 40 C.F.R. §§ 122.41(j)(3), 122.48, 123.25.

72.

Henry County has failed to regulate the CBC site and to require compliance with the terms of the General Permit and have thereby authorized violations of the CWA effluent standards and limitations.

24

73.

All permit holders have a duty to comply with the terms of their permits and noncompliance with a permit is a violation of the CWA. 40 C.F.R. § 122.41(a).

74.

Section 505(a)(1) of the CWA authorizes citizens to commence a civil action against entities who are alleged to be in violation of a CWA effluent standard or limitation. 33 U.S.C. § 1365(a)(1).

75.

Effluent standard or limitation includes an unlawful act under Section 301(a) of the CWA and an effluent limitation under Section 301. 33 U.S.C. § 1365(f)(1) and (2).

76.

Effluent standard or limitation also includes a standard of performance under under Section 306 of the CWA. 33 U.S.C. § 1365(f)(3).

77.

Section 301(a) specifies that it is unlawful to discharge a pollutant in a manner that is not in compliance with Section 404 of the CWA. 33 U.S.C. § 1311(a).

78.

Section 404 of the CWA prohibits the discharge of dredged or fill material into waters of the United States without a permit from the U.S. Army Corps of Engineers or in violation of a permit from the Corps of Engineers. 33 U.S.C. §§ 1311(a) and 1344.

79.

"Fill material" includes any material that is placed in waters of the United States that has the effect of replacing any portion of a water of the United States with dry land, or changing the bottom elevation of any portion of a water of the United States. 33 C.F.R. § 323.2(e).

80.

A discharger of fill material into waters of the United States can either obtain an individual Section 404 permit or comply with the terms of an applicable Nationwide Permit, which is a type of general permit.

81.

CBC, Whitley, and Agee have failed to obtain a Section 404 Permit or to comply with the terms of an applicable Nationwide Permit, and therefore the past and ongoing discharges of dredged or fill materials into waters of the United States violates the Clean Water Act. 33 U.S.C. §§ 1311 and 1344.

26

82.

The CWA entitles Plaintiffs to injunctive relief by an order of this Court that requires Defendants to come into compliance with the CWA and to remove or otherwise remedy the discharges and damages to waters of the United States.

83.

The CWA entitles Plaintiffs to a judgment against Defendants requiring them to pay civil penalties to the United States Treasury for the CWA violations, injunctive relief, and payment of Plaintiffs' litigation costs, including Plaintiffs' reasonable attorneys' fees, expert witness fees, and expenses.

## COUNT II

### Preliminary and Permanent Injunctive Relief

84.

Plaintiffs incorporate by reference all prior paragraphs of this Complaint as if fully restated herein.

85.

Plaintiffs have suffered and will continue to suffer great and immediate irreparable losses for which there are no adequate remedies at law if CBC, Whitley, and Agee are not enjoined from continuing to discharge storm water, sediment, and other pollutants onto their properties.

27

86.

Plaintiffs have suffered and will continue to suffer great and immediate

irreparable losses for which there are no adequate remedies at law if Henry County

is not enjoined from issuing any further permits or approvals to CBC, Whitley, or

Agee to continue construction until the site is brought into compliance with

federal, state, and local laws.

## COUNT III

### Mandamus
### (Against Henry County Defendants Only)

87.

Plaintiffs have a clear and legal right to have Henry County comply with its

non-discretionary permitting and enforcement obligations under the CWA and

under its own ordinances.

88.

Henry County has failed to require CBC, Whitley, or Agee to obtain a land

disturbing permit and to comply with the terms of the General Permit, including

the establishment of best management practices at the CBC site.  Henry County

has also failed to comply with the non-discretionary obligations of its own Soil

Erosion and Sedimentation Control Ordinance, Storm Water Runoff Ordinance,

and Post-Development Stormwater Management for New Development and
Redevelopment. Exhibit "Q." These violations include allowing CBC, Whitley,
and Agee to continue construction activities while in violation of their General
Permit obligations, failing to insure that CBC, Whitley, and Agee adopt general
design principles for erosion and sedimentation control at the CBC site, and failing
to inspect the CBC site to ensure that the site is maintained in accordance with the
law and that the erosion and sedimentation control plan is effective.

89.

Justice and equity require that a writ of mandamus issue to require Henry
County to comply with these non-discretionary duties under federal, state, and
local law.

## COUNT IV

### Trespass

90.

Plaintiffs incorporate by reference all prior paragraphs of this Complaint as
if fully restated herein.

91.

The discharges of storm water and sediment from the CBC property have
physically invaded Plaintiffs' properties and are interfering with their exclusive

29

right of possession and enjoyment of their properties.

92.

The Defendants have or had control over the discharges from the CBC property that flow onto the Plaintiffs' properties.

93.

These discharges onto Plaintiffs' properties are unauthorized and therefore constitute a trespass by Defendants.

94.

These unpermitted invasions of Plaintiffs' properties have resulted in the deterioration and damage of Plaintiffs' properties and have interfered with their exclusive right to possess and enjoy their properties.

95.

Plaintiffs have suffered injuries and damages, including property damage and the loss of the use and enjoyment of their properties, and should be compensated in an amount and manner to be determined at trial.

## COUNT V

### Nuisance

96.

Plaintiffs incorporate by reference all prior paragraphs of this

30

Complaint as if fully restated herein.

97.

The construction activity on the CBC property has caused the discharge of

excessive quantities of storm water, sediment, and other pollutants in a manner that

has caused and continues to cause an unreasonable interference with Plaintiffs'

rights to use and enjoy their properties and has caused physical damage to their

properties, as will the use of the property for athletic fields.

98.

Defendants are responsible for creating, continuing, and maintaining these

discharges to Plaintiffs' properties in violation of the law.

99.

Defendants' actions, and the resulting harm to Plaintiffs, are repetitive and

continuing in nature, despite Plaintiffs' requests that these actions be abated, and

constitute a continuing nuisance.

100.

Henry County's Storm water Management Utility regulations provide that

all property owners and developers within the county "shall provide, manage,

maintain, and operate on-site storm water management systems sufficient to

collect, convey, detain, and discharge storm water in a safe manner consistent with

31

all county development regulations and state and federal law. Any failure to meet this obligation shall constitute a nuisance." Sec. 3-6-176.

101.

The construction at the CBC property has resulted in the diminution of value of Plaintiffs' properties and has impacted the health, safety, comfort, enjoyment, and property rights of the Plaintiffs.

102.

This nuisance will continue until Defendants are compelled to abate the nuisance by ceasing or altering their development, operation, and maintenance practices and conditions at the CBC property and perform sufficient remedial corrective and clean-up activities to restore Plaintiffs' properties to their original conditions and to minimize interference with Plaintiffs' quiet enjoyment of their properties.

103.

Plaintiffs have suffered damages as a result of this nuisance, including property damages and loss of the use and enjoyment of their property, and should be compensated in an amount and manner to be determined at trial.

## COUNT VI

## Negligence

### 104.

Plaintiffs incorporate by reference all prior paragraphs of this Complaint as if fully restated herein.

### 105.

Defendants have acted negligently by allowing continuing discharges of excessive quantities of storm water, sediment, and other pollutants to flow from the CBC property onto Plaintiffs' properties and waterways.

### 106.

Defendants CBC, Whitley, and Agee are property owners and/or operators who have a duty to use their land in a manner that does not injure adjacent landowners.

### 107.

Defendants have breached this duty by failing to implement adequate erosion and sedimentation control measures and by undertaking construction activities in such a manner as to cause discharges and damage to Plaintiffs' properties.

33

108.

Defendants' actions are the proximate cause and cause in fact of injuries to Plaintiffs and their properties.

109.

As a result of Defendants' actions, Plaintiffs have suffered damages for the invasions of their properties, for the loss of the use and enjoyment of their properties and for the restoration of their properties to their original state. Plaintiffs have suffered injuries, pecuniary loss, and property damages and should be compensated in an amount and manner to be proven at trial.

## COUNT VII

### Negligence Per Se

110.

Plaintiffs incorporate by reference all prior paragraphs of this Complaint as if fully restated herein.

111.

Defendants' conduct with regard to the development, operation, and maintenance of the CBC property is governed by numerous federal, state, and local laws, and permits issued under the authority of these laws.

34

112.

These laws create standards that are intended to protect and benefit

Plaintiffs.

113.

Defendants' violations of these laws and standards constitutes negligence

*per se*.

114.

Defendants' violations of these laws and standards proximately caused

Plaintiffs' injuries.

## **COUNT VIII**

### **Unjust Enrichment**

115.

Plaintiffs incorporate by reference all prior paragraphs of this Complaint as

if fully restated herein.

116.

Plaintiffs have not authorized the developers of the CBC site to use their

properties for disposal of storm water and sediment from the site.

117.

The developers have been conferred benefits at Plaintiffs' expense by their intentional use of Plaintiffs' properties for disposal of storm water and sediment from the CBC site.

118.

The developers have knowingly accepted the benefits resulting from their unlawful use of Plaintiffs' properties.

119.

The developers' use of Plaintiffs' properties improved and enhanced the value of developers' pecuniary interests and/or other interests in and related to the development.

120.

The benefits conferred have unjustly enriched the developers at Plaintiffs' expense, and therefore Plaintiffs' are entitled to compensation.

## COUNT IX

### Taking

121.

Plaintiffs incorporate by reference all prior paragraphs of this Complaint as if fully restated herein.

36

122.

By allowing CBC, Whitley, and Agee to develop the CBC property for the benefit of the public and to violate federal, state, and local law in the process, Henry County has taken or damaged the Plaintiffs' properties without just compensation in violation of the Georgia Constitution, art. I, § III, ¶ I.

123.

Consequently, Plaintiffs are entitled to just compensation for the taking or damaging of their properties by Henry County.

## COUNT X

## Punitive Damages

124.

Plaintiffs incorporate by reference all prior paragraphs of this Complaint as if fully restated herein.

125.

The actions and inactions of Defendants have been intentional and demonstrate willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences, for which Plaintiffs seek punitive damages pursuant to O.C.G.A. § 51-12-5.1.

37

## COUNT XI

### Attorneys' Fees

126.

Defendants have acted in bad faith, have been stubbornly litigious, and/or have caused the Plaintiffs unnecessary trouble and expense, for which the Plaintiffs are entitled to recover the expenses of litigation, including reasonable attorneys' fees and expert witness fees, pursuant to O.C.G.A. § 13-6-11.

### TRIAL BY JURY

Plaintiffs demand a trial by jury.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court grant the following relief:

(1)    entry of judgment in favor of the Plaintiffs and against the Defendants;

(2)    entry of a declaratory judgment, declaring that the Defendants have been and are in violation of the CWA at the CBC property, assessing civil penalties for such violations, and awarding Plaintiffs' attorneys' fees for prevailing on their CWA claims;

(3)    an award of compensatory and punitive damages against the

38

Defendants jointly and severally;

      (4)    an award of attorneys' fees and costs against the Defendants

jointly and severally; and

      (5)    such other relief as this Court deems just and proper.

Respectfully submitted this $24^{rd}$ day of June, 2010.


                    /s/ Barbara H. Gallo
                    Barbara H. Gallo
                    Georgia Bar No. 283045
                    Kerry F. Nelson
                    Georgia Bar No. 105395

                    *Attorneys for Plaintiffs*


Krevolin & Horst, LLC
One Atlantic Center
1201 W. Peachtree St., NW
Suite 3250
Atlanta, Georgia 30309
(404) 888-9700 Telephone
(404) 888-9577 Facsimile
Email: gallo@khlawfirm.com
       nelson@khlawfirm.com

## CERTIFICATION UNDER L.R. 7.1D.

Pursuant to Northern District of Georgia Civil Local Rule 7.1D, the

undersigned counsel certifies that this **COMPLAINT** is a computer document and

was prepared in Times New Roman 14 point font, as mandated in Local Rule 5.1C.

This 24[rd] day of June, 2010.

/s/ Barbara H. Gallo
Barbara H. Gallo
Georgia Bar No. 283045
Kerry F. Nelson
Georgia Bar No. 105395

*Attorneys for LHR Farms, Inc.*

Krevolin & Horst, LLC
One Atlantic Center
1201 W. Peachtree St., NW
Suite 3250
Atlanta, Georgia 30309
(404) 888-9700 Telephone
(404) 888-9577 Facsimile
 Email: gallo@khlawfirm.com
        nelson@khlawfirm.com

40